## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MATTHEW HOPKINS, | : |
| | : Case No. _____ |
| Plaintiff, | : |
| | : JURY TRIAL DEMANDED |
| v. | : |
| | : **COMPLAINT FOR VIOLATION OF THE** |
| GP STRATEGIES CORPORATION, SCOTT | : **SECURITIES EXCHANGE ACT OF 1934** |
| N. GREENBERG, TAMAR ELKELES, | : |
| MARSHALL S. GELLER, STEVEN E. | : |
| KOONIN, JACQUES MANARDO, | : |
| RICHARD C. PFENNIGER, JR., SAMUEL | : |
| D. ROBINSON, and ADAM H. STEDHAM, | : |
| | : |
| Defendants. | : |

Plaintiff, by his attorneys, for this complaint against defendants, alleges the following upon personal knowledge with respect to himself, and upon information and belief based upon the investigation of counsel as to all other allegations herein:

### NATURE OF ACTION

1.      On July 15, 2021, GP Strategies Corporation ("GP Strategies" or the "Company") entered into an agreement and plan of merger (the "Merger Agreement") with Learning Technologies Group plc ("Parent'), Learning Technologies Acquisition Corporation ("US Holdco"), and Gravity Merger Sub, Inc. ("Merger Sub," and together with Parent and US Holdco, "Learning Technologies") (the "Proposed Merger").

2.      Under the terms of the Merger Agreement, GP Strategies' stockholders will receive $20.85 in cash per share.

3.      On August 24, 2021, defendants filed a proxy statement (the "Proxy") with the U.S. Securities and Exchange Commission (the "SEC").

4.      As alleged herein, the Proxy fails to disclose material information regarding the

Proposed Merger, and defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

6.     This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8.     Plaintiff is and has been continuously throughout all relevant times the owner of GP Strategies common stock.

9.     Defendant GP Strategies is a Delaware corporation. GP Strategies' common stock is traded on the New York Stock Exchange under the ticker symbol "GPX."

10.     Defendant Scott N. Greenberg is Chairman of the Board of Directors of GP Strategies (the "Board").

11.     Defendant Tamar Elkeles is a member of the Board.

12.     Defendant Marshall S. Geller is a member of the Board.

13.     Defendant Steven E. Koonin is a member of the Board.

14.     Defendant Jacques Manardo is a member of the Board.

15.     Defendant Richard C. Pfenniger, Jr. is a member of the Board.

16.     Defendant Samuel D. Robinson is a member of the Board.

17.     Defendant Adam H. Stedham is Chief Executive Officer, President, and a member of the Board.

18.     Defendants identified in ¶¶ 10-17 are referred to herein as the "Individual Defendants."

**SUBSTANTIVE ALLEGATIONS**

19.     GP Strategies is a global workforce transformation provider of organizational and technical performance solutions.

20.     On July 15, 2021, GP Strategies entered into the Merger Agreement.

21.     The press release announcing the Proposed Merger provides as follows:

GP Strategies Corporation (NYSE: GPX), a global workforce transformation solutions provider, today announced it has entered into a definitive agreement to be acquired by Learning Technologies Group (AIM: LTG.L), a provider of services and technologies for digital learning and talent management, for $20.85 per GP Strategies share in cash, in a transaction valued at approximately $394 million. This transaction represents a premium of 40% over the volume weighted average closing price of GP Strategies shares over the past 180 days, 30% over the volume weighted average closing price over the past 60 days and 32% over the closing price on July 14, 2021, the last trading day prior to this announcement. GP Strategies' Board of Directors has unanimously approved the transaction.

Together, Learning Technologies Group and GP Strategies will create one of the world's largest workforce transformation companies providing solutions to help organizations and their employees operate more effectively by delivering innovative and superior training, consulting, and business improvement services that are customized to meet its clients' needs. This transaction will also provide GP Strategies access to a larger client base, broader product and services offerings, and a larger global footprint, unlocking substantial value and growth opportunities driven by greater scale, diversity and balance across all products, services, and geographies.

"This transaction represents a tremendous opportunity for our customers and our talented employees to work with the global leader in workplace talent and learning, while providing our shareholders with a meaningful premium to our existing stock price," said Adam Stedham, Chief Executive Officer at GP Strategies. "This

combination not only accelerates our growth strategy, but it will also bolster GP Strategies' best-in-class platform with complementary products and specialist services to drive successful and meaningful workforce transformation for our clients. Together, we will offer a customized, holistic tool kit to organizations at the forefront of workplace innovation all around the globe."

Mr. Stedham continued, "This agreement with Learning Technologies Group is a true testament to the many strengths of our organization, including our reputation in the industry, technical expertise and highly qualified workforce. This combination will position both companies for immediate success and long-term growth while providing GP Strategies shareholders with immediate and certain premium value."

"LTG has long admired GP Strategies and has been in regular contact with their management about a possible combination over the past few years," said Jonathan Satchell, Chief Executive of Learning Technologies Group. "I look forward to welcoming GP's teams and people, who are joining an exciting journey as we benefit from consolidation of the growing corporate learning and talent management industry."

Timing and Approvals

The transaction is expected to be completed during the fourth quarter of 2021, subject to GP Strategies shareholder approval, regulatory clearances, and other customary closing conditions. Upon closing of the transaction, GP Strategies will become a division of Learning Technologies Group and its shares will no longer be listed on the NYSE. The Company expects to continue to go to market with the GP Strategies brand and portfolio of offerings.

Sagard Capital Partners Management, GP Strategies' largest shareholder, supports the transaction and has entered into a voting and support agreement to vote its shares in favor of the transaction, subject to customary terms and conditions.

Advisors

Jefferies LLC is serving as exclusive financial advisor and Hogan Lovells is serving as legal adviser to GP Strategies in connection with the transaction.

Goldman Sachs International is serving as exclusive financial advisor, Numis Securities Limited is serving as debt advisor and DLA Piper is serving as legal advisor to Learning Technologies Group in connection with the transaction.

22.    On August 24, 2021, defendants filed the Proxy, which fails to disclose material

information regarding the Proposed Merger.

<u>Financial Projections</u>

23.     The Proxy fails to disclose material information regarding GP Strategies' financial projections.  The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

24.     The Proxy Statement fails to disclose: (i) projected net income; and (ii) the line items used to calculate the financial projections.

<u>Financial Analyses</u>

25.     The Proxy fails to disclose material information regarding the financial analyses conducted by Jefferies LLC ("Jefferies").  When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

26.     Regarding Jefferies' Discounted Cash Flow Analysis, the Proxy fails to disclose: (i) the line items used to calculate unlevered free cash flows; (ii) the terminal values; (iii) the inputs and assumptions underlying the discount rates and perpetuity growth rates utilized by Jefferies in the analysis; and (iv) the net debt, net cash, and number of fully-diluted outstanding shares utilized by Jefferies in the analysis.

27.     Regarding Jefferies' Selected Public Companies Analysis, the Proxy fails to disclose the individual multiples for the companies utilized by Jefferies in the analysis.

28.     Regarding Jefferies' Selected Transactions Analysis, the Proxy fails to disclose the individual multiples for the transactions utilized by Jefferies in the analysis.

29.     Regarding Jefferies' Premiums Paid Analysis, the Proxy Statement fails to disclose: (i) the transactions utilized by Jefferies in the analysis; and (ii) the premiums paid in the transactions.

30.     Regarding Jefferies' Equity Research analysis, the Proxy Statement fails to disclose: (i) the price targets utilized by Jefferies in the analysis; and (ii) the sources of the price targets.

## COUNT I

**Claim Against the Individual Defendants and GP Strategies for Violation of Section 14(a) of the Exchange Act and Rule 14a-9**

31.     Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

32.     The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, failed to state material facts necessary to make the statements therein not materially false or misleading.

33.     GP Strategies is liable as the issuer of these statements.

34.     The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

35.     The Individual Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

36.     The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Merger.

37.     A reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

38.     The Proxy is an essential link in causing plaintiff to approve the Proposed Merger.

39.     Accordingly, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9.

40.     Plaintiff is threatened with irreparable harm.

## COUNT II

**Claim Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

41.     Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

42.     The Individual Defendants acted as controlling persons of GP Strategies within the meaning of Section 20(a) of the Exchange Act as alleged herein.

43.     Due to their positions as officers and/or directors of GP Strategies and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

44.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

45.     Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to

control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.

46.     The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Merger.  They were thus directly involved in the making of the Proxy.

47.     Accordingly, the Individual Defendants violated Section 20(a) of the Exchange Act.

48.     The Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.

49.     These defendants are liable pursuant to Section 20(a) of the Exchange Act.

50.     Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief against defendants as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from consummating the Proposed Merger;

B.     In the event defendants consummate the Proposed Merger, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E.     Awarding plaintiff the costs of this action, including reasonable allowance for

attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Dated:  September 10, 2021                    **GRABAR LAW OFFICE**

                                    By: _____

                                         Joshua H. Grabar (#82525)
                                         One Liberty Place
                                         1650 Market Street, Suite 3600
                                         Philadelphia, PA 19103
                                         267-507-6085
                                         jgrabar@grabarlaw.com

                                         *Counsel for Plaintiff*